**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VICTORIA ANDRETTA, *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>LONG ISLAND PLASTIC SURGICAL GROUP, PC d/b/a NEW YORK PLASTIC SURGICAL GROUP,<br><br>Defendant. | Case No. 1:24-cv-04554-VSB<br><br>The Honorable Vernon S. Broderick, United States District Judge |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Matthew J. Langley
ALMEIDA LAW GROUP LLC
849 W. Webster Avenue
Chicago, Illinois 60614
T: (773) 554-9354
matt@almeidalawgroup.com

*Counsel for Plaintiff*

## TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND OF THE LITIGATION ..... 2

SUMMARY OF THE PROPOSED SETTLEMENT TERMS ..... 3

1. The Settlement Class ..... 3
2. Settlement Benefits ..... 4
3. Claims Administration Costs, Attorneys' Fees and Expenses & Service Awards ..... 4
4. Settlement Administration & Notice to the Settlement Class ..... 5
5. The Claims Procedure, Objections & Opt-Outs ..... 6
6. Scope of the Release ..... 8

LEGAL STANDARD ..... 8

DISCUSSION ..... 10

I. The Settlement Class Should be Certified for Settlement Purposes. ..... 10

A. The Settlement Class Satisfies the Requirements of Rule 23(a). ..... 10

B. The Settlement Class meets the Requirements of Rule 23(b). ..... 13

II. The Settlement Meets the Requirements for Preliminary Approval Under Rule 23(e)(2). ..... 15

A. The proposed Class Representative & proposed Class Counsel have ..... 16

adequately represented the Classes. ..... 16

B. The Settlement was negotiated at arm's length.......................................................... 17

C. The Settlement has no obvious deficiencies & does not grant preferential............. 18

treatment to any Class Members......................................................................... 18

D. The Settlement treats Class Members equitably relative to each other. .................. 21

III. The Court should approve the proposed Notice Program........................................ 21

IV. The Court should appoint the Settlement Administrator.......................................... 22

V. The Court should schedule a final approval hearing. ................................................. 22

CONCLUSION............................................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

Cases

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591, (1997) .......... 21
*Bolanos v. Norwegian Cruise Lines Ltd.*,
212 F.R.D. 144 (S.D.N.Y. 2002) .......... 16, 17
*Charron v. Pinnacle Grp. N.Y. LLC*,
874 F. Supp. 2d 179 (S.D.N.Y. 2012) .......... 28
*Charron v. Wiener*,
731 F.3d 241 (2d Cir. 2013) .......... 11
*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) .......... 13
*Dornberger v. Metro. Life Ins. Co.*,
203 F.R.D. 118 (S.D.N.Y. 2001) .......... 27
*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
301 F.R.D. 116 (S.D.N.Y. 2014) .......... 14
*Frasco v. Flo Health, Inc.*,
2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) .......... 25
*Girault v. Supersol 661 Amsterdam, LLC*,
2012 WL 2458172 (S.D.N.Y. June 28, 2012) .......... 13
*Hadel v. Gaucho, LLC*,
2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016) .......... 10
*In re Advoc. Aurora Health Pixel Litig.*,
740 F. Supp. 3d 736 (E.D. Wis. 2024) .......... 15, 24
*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) .......... 20
*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .......... 22
*In re EVCI Career Collss Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) .......... 9
*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009) .......... 16
*In re Novant Health, Inc.*,
2024 WL 3028443 (M.D.N.C. June 17, 2024) .......... 16, 25
*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) .......... 24
*In re TikTok, Inc., Consumer Priv. Litig.*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021) .......... 20
*In re TJX Cos. Retail Sec. Breach Litig.*,
246 F.R.D. 389 (D. Mass. 2007) .......... 25
*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997) .......... 17, 18

*McBean v. City of New York*,
228 F.R.D. 487 (S.D.N.Y. 2005) .......... 19
*McReynolds v. Richards-Cantave*,
588 F.3d 790 (2d Cir. 2009) .......... 9
*Millien v. Madison Square Garden Co.,*
2020 WL 4572678 (S.D.N.Y. Aug. 7, 2020) .......... 22
*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002) .......... 19
*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012) .......... 23
*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) .......... 21
*Sykes v. Mel S. Harris & Assocs. LLC*,
780 F.3d 70 (2d Cir. 2015) .......... 15
*The Bank of New York Mellon Corp.,*
2010 WL 2643307 (S.D.N.Y. June 25, 2010) .......... 25
*Torretto v. Donnelley Fin. Sols., Inc.*,
2023 WL 123201 (S.D.N.Y. Jan. 5, 2023) .......... 27
*Velez v. Novartis Pharms. Corp.*,
2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) .......... 9
*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 14
*Zeltser v. Merrill Lynch & Co., Inc.,*
2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) .......... 21
*Zivkovic v. Laura Christy LLC*,
329 F.R.D. 61 (S.D.N.Y. 2018) .......... 15

Rules

Fed. R. Civ. P. 23(a-e)(iii-4).......... 1, 2, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18, 19, 21, 22, 23, 24, 26, 27, 28

Plaintiff Victoria Andretta ("Plaintiff"), on behalf of herself and all others similarly situated, by and through undersigned counsel, submits this Memorandum of Law in Support of her Unopposed Motion for Preliminary Approval of Class Action Settlement. Plaintiff respectfully requests that this Honorable Court grant preliminary approval of the Parties' proposed class action settlement under Federal Rule of Civil Procedure 23. Defendant Long Island Plastic Surgical Group, PC d/b/a New York Plastic Surgical Group, PC ("LIPSG" or "Defendant" and collectively with Plaintiff, the "Parties") does not oppose the relief sought in this motion.[1]

## INTRODUCTION

After months of litigation and a contested, arm's-length mediation, Plaintiff and Defendant reached the Settlement Agreement, which is fair, adequate and reasonable. Further to this Agreement, Defendant will, if approved by this Court, pay $600,000.00 into a non-reversionary fund to benefit approximately 34,707 individuals whose confidential health information was allegedly compromised by Defendant's application of the Meta Pixel and Conversions Application Programming Interface (CAPI) on its Website. Throughout the pendency of the case, Defendant has disputed and continues to dispute the merits of Plaintiff's claims. Foregoing years of potentially protracted litigation and instead receiving monetary renumeration in the near term is an excellent result for Settlement Class Members. The proposed Settlement is within the range of reasonableness and warrants the provision of class notice so that Settlement Class Members may be apprised of the terms of the Settlement and weigh in with their responses, which Class Counsel expect to be overwhelmingly positive.

[1] Unless otherwise indicated, capitalized terms refer to and have the same meaning as set forth in the Settlement Agreement, which is attached as **Exhibit 1** to the Declaration of Matthew J. Langley ("Langley Decl."), attached hereto as **Exhibit A.**

Given the strength and overall fairness of this Settlement, Plaintiff respectfully requests that this Court: (i) preliminarily approve the Settlement as fair, adequate, reasonable and within the reasonable range of possible final approval; (ii) appoint Plaintiff Victoria Andretta as Class Representative; (iii) appoint Almeida Law Group LLC as Class Counsel; (iv) provisionally certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (v) approve the Parties' proposed notice program and confirm that it is appropriate notice that satisfies due process and Federal Rule of Civil Procedure 23; (vi) schedule a Final Approval Hearing and (vii) set deadlines for Settlement Class Members to submit claims and to object to or exclude themselves from the Settlement.

## BACKGROUND OF THE LITIGATION

On June 14, 2024, Plaintiff commenced this class action lawsuit alleging that her personal health information and personally identifiable information was collected and shared with Facebook through Defendant's implementation of the Facebook Pixel and CAPI on its Website. *See* ECF No. 1. Plaintiff's class action complaint asserts six claims against Defendant under federal and New York state law: (1) violation of the federal Electronic Communications Privacy Act for an alleged unauthorized interception, use, and disclosure; (2) breach of confidence; (3) unjust enrichment; (4) negligence; (5) violations of the New York Consumer Law for Deceptive Acts and Practices; and (6) constructive bailment. *See* ECF No. 1.

On September 17, 2024, the Parties filed a consent motion for extension of time to respond to the complaint in which the Parties informed the Court that they had agreed to engage in mediation. *See* ECF No. 13. In light of the Parties' agreement to engage in mediation, on September 20, 2024, the Court issued an order staying the case. *See* ECF No. 14.

On November 18, 2024, the Parties engaged in a full-day mediation before the Honorable Mary Anne Mason (Ret.) and made substantial progress but did not reach an agreement on a settlement. Langley Decl. ¶ 8; *see also* ECF No. 15 (Joint Status Report). On February 26, 2025, the Parties filed a Joint Status Report in which they informed the Court that they had reached a settlement in principle. *See* ECF No. 17. On July 25, 2025, the Parties filed a Joint Status Report informing the Court that the Parties executed a settlement agreement and attached the Settlement Agreement to the report. *See* ECF No. 22.

## SUMMARY OF THE PROPOSED SETTLEMENT TERMS

As detailed herein, the proposed Settlement provides a straightforward claims process by which Settlement Class Members may obtain an award from the Settlement or exclude themselves or object. In exchange for Settlement and monetary benefits, the Settlement Class Members will release any and all claims against Defendant arising from or related in any way to the claims that have been brought or could have been brought in the Litigation.

### 1. The Settlement Class

The Settlement provides for the certification of the Settlement Class, defined as "all individuals who created an account on the Website's patient portal, submitted forms on the Website and/or made an online appointment through the Website." SA, ¶ 1.24. The Settlement Class consists of approximately 34,707 individuals. Langley Decl. ¶ 4. A Settlement Class Member is any Person who falls within the definition of the Settlement Class. SA, ¶ 1.25. The Settlement Class excludes: (i) the officers and directors of Defendant and their affiliates, parents, and subsidiaries; (ii) any judge, justice, or judicial officer presiding over the Litigation and the members of their immediate families and judicial staff; (iii) any individual who timely and validly

excludes themselves from the Settlement; and (iv) the successors of assigns of any such excluded persons. *Id.* ¶ 1.24.

**2. Settlement Benefits**

The Settlement provides Class Members with timely and tangible benefits targeted at remediating the specific harms they allegedly suffered using Defendant's Website as detailed in the Complaint. The monetary benefits of the Settlement are available to all Settlement Class Members through the $600,000.00 Settlement Fund to be funded by Defendant. S.A. ¶ 2.1. The Settlement Fund will be used to pay for (i) reasonable Cost of Claims Administration incurred pursuant to this Settlement Agreement as approved by the Parties and approved by the Court; (ii) any taxes owed by the Settlement Fund; (iii) any service approved by the Court; (iv) any Attorneys' Fees and Expenses Award as approved by the Court; and (v) any benefits to Settlement Class Members, pursuant to the terms and conditions of the Settlement Agreement. *Id.* ¶ 2.5. Settlement Class Members who submit valid Claim Forms will receive a *pro rata* cash distribution from the monies remaining in the Net Settlement Fund after the payment of any Attorneys' Fee Award and Service Award. *Id.* ¶ 3.5.

**3. Claims Administration Costs, Attorneys' Fees and Expenses & Service Awards**

As part of the Settlement, Defendant agrees to pay, through the Settlement fund, the costs and expenses incurred through Claims Administration including, but not limited to, the costs of notice to the Settlement Class Members. SA, ¶ 3.1. The Settlement Agreement also permits Class Counsel to request an Attorneys' Fee Award not to exceed thirty-five percent of the Settlement Fund, as well as Attorneys' Costs and Expenses incurred in prosecuting the litigation. *Id.* ¶ 8.1. In addition, the Settlement Agreement permits Class Counsel to request approval of a service award of $2,500.00 for Plaintiff, which recognizes her efforts and commitment on behalf of the

Settlement Class. *Id.* ¶ 8.2. Class Counsel will move separately for approval of an Attorneys' Fee Award, Attorneys' Costs and Expenses and Service Awards fourteen days prior to the Objection Deadline. *Id.* ¶ 8.3. The Parties did not discuss or agree upon payment of attorneys' fees and expenses or Plaintiff's proposed service awards until after they agreed on all material terms of relief to the Settlement Class. *Id.* ¶¶ 8.1-8.2.

**4. Settlement Administration & Notice to the Settlement Class**

The Parties have selected RG/2 Claims Administration LLC, as approved by the Court, as Settlement Administrator through a competitive bidding process. SA, ¶ 1.22. RG/2 Claims Administration LLC is experienced in administering data privacy class claims. *See* Declaration of Melissa Baldwin of RG/2 Claims Administration LLC in Connection with Preliminary Approval of Settlement ("RG/2 Decl.") (attached to Langley Decl. as **Exhibit 3**).

To notify the Settlement Class, the Settlement describes the Notice Program. SA, ¶ 4.1. Because Defendant has contact information for much of the Settlement Class, the Settlement requires Defendant to provide the Settlement Administrator with the names, last known email address and/or last known home address for the Settlement Class Members within fifteen (15) days of the entry of the Preliminary Approval Order. *Id.* ¶ 4.2. The Settlement Administrator shall then send the Short-Form Notice to all Settlement Class Members within thirty (30) days of entry of the Preliminary Approval Order. *Id.* ¶ 4.3. The Settlement directs the Settlement Administrator to distribute the Short Form Notice by email to the greatest extent possible. *Id.* ¶ 4.4. To the extent that an email address is not available for a Settlement Class Member, notice shall be provided by USPS regular mail. *Id.* In addition, the Settlement Administrator shall create a dedicated Settlement Website, which will contain important documents regarding the case, including, but not limited to, the Complaint, Short-Form Notice, Long-Form Notice, the Claim Form, the Settlement

Agreement, and other relevant settlement and court documents so that Claims may be submitted online. *Id.* ¶ 4.5.

**5. The Claims Procedure, Objections & Opt-Outs**

In order to receive their pro rata portion of the Settlement Benefits, all Settlement Class Members need to do is complete and submit a valid, timely and signed Claim Form. S.A. ¶ 3.3. Settlement Class Members may submit Claim Forms to the Settlement Administrator electronically via the Settlement Website or physically by mail. *Id*. Settlement Class Members must submit their Claim by the Claims Deadline set by the Court in the Preliminary Approval Order. *Id*. The Settlement Administrator will review and evaluate all Claims, and shall determine their validity, timeliness and completeness. *Id.* ¶ 3.4.

Subject to the terms and conditions of this Settlement Agreement, and thirty (30) days after the Effective Date, the Settlement Administrator shall provide a Claims Payment to each Claimant whose Claim Form has been approved by the Settlement Administrator or the Court. *Id.* ¶ 3.5. Each Claims Payment shall equal the pro rata share of the monies remaining in the Net Settlement Fund after the payment of any Attorneys' Fee Award and Service Award. *Id.* ¶ 3.5. Each Claims Payment shall be delivered to the digital or physical address provided by the Claimant on his or her Claim Form. *Id.* ¶ 3.6. To the extent any monies remain in the Net Settlement Fund more than one hundred twenty (120) days after the distribution of Claims Payments to the Claimants, a subsequent payment will be evenly made to all Claimants who cashed or deposited their initial Claim Payments they received, provided that the average payment amount is equal to or greater than $3.00. *Id.* ¶ 3.7. Thereafter, the amount remaining in the Net Settlement Fund, if any, shall be distributed by mutual agreement of the Parties and the Court. *Id.* For any Claim Payment returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended

recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to find a valid address and re-send the Claim Payment within thirty (30) Days after the payment was returned. *Id.* ¶ 3.8.

Settlement Class Members may opt out from receiving the Settlement's Benefits by individually signing and timely submitting written notice of such intent to the designated postal address established by the Settlement Administrator. *Id.* ¶ 5.1. The written notice must clearly manifest a Person's intent to be excluded from the Settlement Class, which intent shall be determined by the Settlement Administrator. *Id.* Any Person who submits and valid and timely notice of their intent to be excluded from the Settlement Class shall not receive any benefits of or be bound by the Settlement's terms. *Id.* ¶ 5.2.

Settlement Class Members may also object to the Settlement by submitting written objections by mail to the Court, Class Counsel, and Defendant's Counsel. *Id.* ¶ 6.1. Each Objection must (i) set forth the Settlement Class Member's full name, current address, telephone number, and email address; (ii) contain the Settlement Class Member's original signature; (iii) contain proof that the Settlement Class Member is a member of the Settlement Class (*e.g.*, via a copy of the settlement notice); (iv) state that the Settlement Class Member objects to the Settlement, in whole or in part; (v) set forth a statement of the legal and factual basis for the Objection; (vi) provide copies of any documents that the Settlement Class Member wishes to submit in support of his/her position; (vii) identify all counsel representing the Settlement Class Member, if any; (viii) contain the signature of the Settlement Class Member's duly authorized attorney or other duly authorized representative, along with documentation setting forth such representation; and (ix) contain a list, including case name, court, and docket number, of all other cases in which the objector and/or the

objector's counsel has filed an objection to any proposed class action settlement in the past three (3) years. *Id.* ¶ 6.2.

**6. Scope of the Release**

To receive Settlement Benefits, Plaintiff and Settlement Class Members agree to release Defendant and all affiliated entities from all past, present and future claims and causes of action asserted or that could have been asserted, or that arise out of or are connected to the Litigation. S.A., ¶ 7.2. This includes the release of Unknown Claims that could have been raised in the Litigation. *Id.* ¶ 7.3.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires judicial approval of any proposed class action settlement. Fed. R. Civ. P. 23(e). Rule 23 (e)(1)(B) directs a court to grant preliminary settlement approval and direct notice to the proposed class if the court "will likely be able to" grant final approval under Rule 23(e)(2) and "will likely be able to" certify a settlement class for purposes of entering judgment. Fed. R. Civ. P. 23(e)(1)(B). Courts "generally favor the resolution of civil actions, particularly class actions, through settlement." *Velez v. Novartis Pharms. Corp.*, 2010 WL 4877852, at *11 (S.D.N.Y. Nov. 30, 2010).

In considering whether to approve a proposed settlement, courts are mindful of the "strong judicial policy in favor of settlements particularly in the class action context." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009). Given this policy, "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Collss Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007). Moreover, "[c]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary

delay and allows the judicial system to focus resources elsewhere." *Hadel v. Gaucho, LLC*, 2016 WL 1060324, at *2 (S.D.N.Y. Mar. 14, 2016) (collecting cases).

Rule 23(e)(2) sets out the factors a court must consider in determining whether a proposed class action settlement is "fair, reasonable, and adequate." Those factors are whether:

(A) the class representative and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Fed. R. Civ. P. 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As the Advisory Committee's note explains, subsections (A) and (B) focus on the "procedural" fairness of a settlement and subsections (C) and (D) focus on the "substantive" fairness of the settlement. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments. These factors are similar to the "procedural" and "substantive" factors the Second Circuit developed prior to the amendment. *See Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (explaining that courts evaluate procedural and substantive fairness of a class settlement). The 2018 amendment, however, recognizes that "[t]he sheer number of factors" considered in various Circuits "can distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments. The

2018 Amendment "therefore directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *Id.*

Here, the Court should grant preliminary approval because it "will likely be able to" both grant final approval to the Settlement as "fair, reasonable, and adequate," and certify the Settlement Class for purposes of entering judgment after notice and a final approval hearing.

## DISCUSSION

### I. THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.

To determine whether the Court will likely be able to certify the Settlement Class for purposes of entering judgment on the Settlement, the Court looks to the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and the requirements of any subsection of Fed. R. Civ. P. 23(b), here subsection (b)(3) (predominance and superiority). For the reasons set forth below, the Settlement Class meets all the necessary requirements for certification.

#### 7. The Settlement Class Satisfies the Requirements Rule 23(a).

1. <u>Settlement Class Members are so numerous that joinder of all is impracticable.</u>

Rule 23(a)(1) requires that "the class be so numerous that joinder of all members is impracticable." Numerosity does not require a fixed number of class members but "is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also Girault v. Supersol 661 Amsterdam, LLC*, 2012 WL 2458172, at *1 (S.D.N.Y. June 28, 2012) (finding numerosity where there were over 100 putative class members).

Here, there are approximately 34,707 individuals who are part of the Settlement Class. Langley Decl. ¶ 4. Joinder is thus impracticable, and the requirements of Rule 23(a)(1) are satisfied.

2. There are questions of law and fact common to the Settlement Class.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Rule 23(a)(2) is a "low hurdle," *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014), and "for purposes of Rule (a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). Commonality requires only that the proposed class members' claims "depend upon a common contention," which "must be of such a nature that it is capable of class wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Damages resulting from a "unitary course of conduct" are sufficient to show commonality. *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 85 (2d Cir. 2015) (cleaned up). "The claims for relief need not be identical for them to be common." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018).

Here, Plaintiff alleges that each of the Settlement Class Members share the common, class-wide question of whether and to what extent Defendant is liable for exposing their protected health information and personally identifiable information through its use of the Meta Pixel. *See, e.g.*, Complaint (ECF No. 1), ¶ 292 (listing common questions of law and fact). In addition, Plaintiff alleges that all Settlement Class Members can demonstrate damages resulting from the same course of conduct—namely, installation of the Meta Pixel on Defendant's Website and subsequent disclosure of Settlement Class Member information protected health information and personally identifying information. This requirement in the context of data privacy class action settlements is readily satisfied. *See, e.g.*, *In re Advoc. Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 745 (E.D. Wis. 2024) (granting final approval in pixel-tracking case); *In re Novant Health, Inc.*, 2024 WL 3028443, at *3 (M.D.N.C. June 17, 2024) (similar). Thus, these common questions, and others

alleged in the Complaint, are central to the causes of action brought here and will generate common answers that could be addressed on a class-wide basis.

3. The claims of the proposed Class Representative are typical.

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." Fed. R. Civ. P. 23(a)(3); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation omitted); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002). The purpose of the typicality requirement is to ensure that "maintenance of a class action is economical and that the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (cleaned up).

Here, the claims of Plaintiff and the Settlement Class Members all stem from the same course of conduct—the installation of the Meta Pixel on Defendant's Website, which, in turn allegedly compromised Class Members' protected health information and personally identifying information. *See, e.g.*, Complaint (ECF No. 1), ¶ 289 (describing typicality). As such, typicality is satisfied.

4. Class Representative will adequately protect the interests of the Settlement Class.

Rule 23(a)(4) requires that a representative plaintiff be able to provide fair and adequate representation for the class. To satisfy the adequacy requirement, Plaintiff must establish that: (i) there is no conflict of interest between the class representative and other members of the class; and (ii) plaintiff's counsel is qualified, experienced, and generally able to conduct the litigation. *Bolanos*, 212 F.R.D. at 156 (quoting *Marisol A.*, 126 F.3d at 378).

Here, Plaintiff's interests are aligned with those of the Settlement Class Members in that they seek relief for injuries arising out of the same course of conduct through Defendant's installation and use of tracking tools. *See, e.g.*, Complaint (ECF No. 1), ¶¶ 25-39 (discussing Plaintiff's experience with Defendant) & 290 (demonstrating adequacy). Plaintiff's and Settlement Class Members' private information was allegedly collected and disclosed—without their knowledge nor consent—by Defendant to third parties like Meta in the same manner and under the same circumstances using tracking tools. *Id.* ¶¶ 80-163. Under the terms of the Settlement, Plaintiff and Settlement Class Members will all be eligible for equivalent cash payments from the respective portion of the Net Settlement Fund to help remedy the alleged harms they have experienced as a result of Defendant's actions. *See* S.A. ¶ 2.1. In addition, proposed Class Counsel have significant experience as class action litigators, particularly in data privacy and security litigation and are well suited to advocate on behalf of the Settlement Class in this Litigation. *See, e.g.*, Langley Decl. ¶¶ 48-50. Thus, the requirements of Rule 23(a) are satisfied.

**B. The Settlement Class meets the Requirements of Rule 23(b).**

Plaintiff seeks to certify a settlement class under Rule 23(b)(3), which has two components: predominance and superiority. Here, Rule 23(b)(3) is satisfied because: (i) questions of law and fact common to Settlement Class Members predominate over any individual questions and (ii) the class action mechanism is superior to any other methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

1. <u>Common questions of law & fact predominate over any questions affecting only individual members of the Settlement Class.</u>

"Class-wide issues predominate if resolution of some of the legal or factual questions . . . can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252

(2d Cir. 2002). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

In this case, the predominant issues are whether Defendant was required to disclose to Settlement Class Members that it used tracking tools on its Website and the alleged harm that arose when the personal information belonging to Settlement Class Members was allegedly shared, without their consent, with companies like Meta. Other courts have recognized that the types of common issues arising from similar unauthorized disclosures predominate over any individualized issues. *See, e.g.*, *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1086 (N.D. Ill. 2021) ("Predominance is met because many of the issues of law and fact common to members of the Nationwide Class and Illinois Subclass, respectively, may be resolved "through generalized proof"—namely, by examining Defendants' uniform data collection and privacy practices against their legal obligations."); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312-15 (N.D. Cal. 2018) (finding predominance satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information"). The predominance requirement is satisfied here.

2. <u>A class action is superior to other methods for the fair & efficient adjudication of the controversy.</u>

Resolving this Litigation now through this class-wide settlement is superior to litigation by individual Settlement Class Members. Most Settlement Class Members lack the financial resources to prosecute individual actions, and the value of any individual claim is simply too low to justify individual cases. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, (1997) (explaining that the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action

prosecuting his or her rights" (internal quotation omitted)). Further, "[e]mploying the class device here will not only achieve economies of scale for Class Members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and preventing inconsistent adjudications." *Zeltser v. Merrill Lynch & Co., Inc.,* 2014 WL 4816134, at *3 (S.D.N.Y. Sept. 23, 2014). Accordingly, the Settlement Class is the superior method of adjudicating the action.

Here, there is little reason for proposed Class Members to prosecute individual actions. While the total alleged economic harm is significant, each individual claim is small compared to the costs of undertaking separate, individualized litigation. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Although Plaintiff asserts that the injuries resulting from Defendant's alleged use of tracking tools are real, the cost of individually litigating against it would easily exceed the value of any relief that could be obtained by any one consumer. Thus, a class action is a superior method of adjudication. In sum, the proposed Classes' claims satisfy Rule 23(b)(3)'s requirements and should be certified. Adjudicating individual actions here is impracticable: the amount in dispute for each class member is too small, the technical issues involved are too complex and the required expenses too costly. Thus, the Court may certify the Classes for settlement under Rule 23(b)(3).

## II. THE SETTLEMENT MEETS THE REQUIREMENTS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)(2).

The proposed Settlement is fair, reasonable, and adequate considering the relevant factors, and the Court should grant preliminary approval and direct notice because the Court will very likely be able to grant final approval after considering those factors.

### A. The proposed Class Representative & proposed Class Counsel have adequately represented the Classes.

First, the Class Representative and proposed Class Counsel have adequately represented the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(A). The Class Representative and proposed Class Counsel "have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *Millien v. Madison Square Garden Co.,* 2020 WL 4572678, at *5 (S.D.N.Y. Aug. 7, 2020).

Proposed Class Counsel have extensive experience in class action litigation in general and in cases involving data privacy in particular. *See* Langley Decl. ¶¶ 48-50. Their combined expertise allowed them to, among other things, investigate and evaluate the risks and merits of Plaintiff's claims and to build a strong case in a complex area including, but not limited to, the application of legal theories to complex technological matters involving the use of tracking and source code to collect and to divulge putative Class Members' private personal and health information to third parties. *Id.* ¶¶ 34-42. Further, proposed Class Counsel conducted a thorough (and ongoing) pre-suit investigation of their client's claims as measured against a rapidly developing area of the law. *See id*. ¶¶ 9-18 Moreover, given their experience in these pixel tracking matters, Class Counsel was able to request very specific information from Defendants to aid in the settlement negotiations, allowing both parties to evaluate the strengths and weaknesses of the case in a timely and efficient manner. *See id.* ¶¶ 14; 17.

Proposed Class Counsel have extensive experience in class action litigation in general and in cases involving data tracking in particular. *See* Langley Decl. ¶¶ 48-50. Here, proposed Class Counsel's expertise allowed him to build a strong case in a complex area involving the application of novel legal theories to protect Class Members' health information. *Id.* Proposed Class Counsel

also engaged in extensive case investigation and secured this successful mediation position. *Id.* ¶¶ 9-18.

Similarly, the Class Representative has adequately represented the Settlement Class. Plaintiff was engaged by counsel to assist in pre-suit investigation, she reviewed and approved the allegations of the pleadings, participated in responding to requests for information, and kept apprised and provided input during the informal and formal mediation process. *Id.* ¶¶ 18, 47. The Class Representative also reviewed and approved the terms of the Settlement. *Id.* ¶ 18. Accordingly, the Class Representative and proposed Class Counsel have adequately represented the Class, and this factor weighs in favor of preliminary approval. Fed. R. Civ. P. 23(e)(2)(A).

**B. The Settlement was negotiated at arm's length.**

Next, the Settlement satisfies Rule 23(e)(2)(B) as it is the product of hard-fought, arm's-length negotiations overseen by an experienced mediator, Justice Mary Anne Mason (Ret.), during which Defendant disputed Plaintiff's allegations. *See* Fed. R. Civ. P. 23(e)(2)(B); *see also* Langley Decl. ¶¶ 16, 40. "To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). Moreover, "great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997). Proposed Class Counsel has assessed the potential risks and rewards of litigation and is of the opinion that the Settlement is an excellent result for the Settlement Class. *See* Langley Decl. ¶¶ 34-42.

Further, the Settlement was reached only after a full-day, in-person, mediation session with the Honorable Mary Anne Mason (Ret.), an experienced and neutral mediator. *See* Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note to 2018 amendments ("[T]he involvement of a

neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."). In short, this Settlement was negotiated at arm's length and was procedurally fair. *See* Fed. R. Civ. P. 23(e)(2)(B).

### C. The Settlement has no obvious deficiencies & does not grant preferential treatment to any Class Members.

Rule 23(e)(2)(c) requires examination of the relief provided by the Settlement. The benefits available to Class Members as a result of the Settlement are significant in comparison to the risk of obtaining no recovery or reduced recovery after protracted litigation. *See* Langley Decl. ¶¶ 43-47. This Settlement ensures that Settlement Class Members will be compensated for the harms they have suffered as a result of Defendant's use of tracking tools. Although the precise amount of the cash payment to each Class Member cannot be ascertained until after the Claims Deadline, the Net Settlement Fund will draw from a $600,000.00 Settlement Fund, thus ensuring that likely Claims Payment per Class Member is significant and, at minimum, if every class member submits a claim, will be approximately $17.00. *See* SA, ¶ 3.5.

The Settlement Benefits here are favorably comparable to results reached in other data privacy cases concerning the use of the Meta Pixel to collect private information. *See, e.g.*, *In re Advoc. Aurora Health Pixel Litig.*, 740 F. Supp. 3d at 745 (final approval granted for non-reversionary common fund settlement of $12.25 million for a class of approximately 2.5 million class members); *John v. Froedtert Health, Inc.*, 2023CV001935, ECF No. 40 (Milwaukee Cty. Cir. Ct. Case Sept. 29, 2023) (final approval granted for non-reversionary common fund settlement of $2 million for a class of approximately 459,000 patients); *In re Novant Health, Inc.*, 2024 WL 3028443 (final approval granted for non-reversionary common fund settlement of $6.66 million

for a class of approximately 1,362,165 million class members). As the relief provided through the Settlement is above the range of possible approval, preliminary approval should be granted.

1. <u>The costs, risks and delay of trial & appeal are considerable.</u>

The benefits conferred by the Settlement are immediate and significant, and, although Class Counsel believes Plaintiff's claims are strong, the expense, duration and complexity of protracted litigation would be substantial and the outcome uncertain. *See* Langley Decl. ¶¶ 25-33. Proceeding with continued litigation would present risks inherent in class certification and proof of liability—both factors considered under this Circuit's test for final approval set forth in *Grinnell*.

For example, although plaintiffs have survived Rule 12 motions in privacy cases involving the Meta Pixel, Plaintiff here would still be faced with the challenge of Rule 12 motion practice, and winning class certification and an eventual jury verdict is far from certain. *See, e.g.*, *Frasco v. Flo Health, Inc.*, 2024 WL 4280933, at *1 (N.D. Cal. Sept. 23, 2024) (granting summary judgment in part in pixel-tracking case); *Hammon v. The Bank of New York Mellon Corp.,* 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at Rule 56 stage); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (denying certification of data breach class). Through the Settlement, Settlement Class Members gain significant benefits in the near term without having to face further risk of not receiving any relief.

2. <u>The proposed method of distributing relief & processing claims is objective, efficient and fair.</u>

Under the terms of the Settlement, the Settlement Administrator is responsible for assessing Claims and distributing Settlement benefits. SA, ¶¶ 3.1-3.8. All Settlement Class Members may file a Claim until the Claims Deadline, which will be set by the Court. *Id.* ¶ 3.3. The Settlement Administrator is charged with reviewing and evaluating each Claim Form, assessing the validity of any required documentation, and ensuring Claims are submitted timely and completely. *Id.*

¶ 3.4. Class Members will also be able to contact the Settlement Administrator with any questions through the Settlement Website or a toll-free telephone number. RG/2 Decl. ¶ 9. This procedure is objective, effective and fair.

3. Attorneys' Fees and Costs and Expenses as well as the Service Awards that Plaintiff will request are reasonable and appropriate.

By separate motion (to be filed at least fourteen days before the Objection Deadline), Plaintiff will seek Court approval of Attorneys' Costs and Expenses, Attorneys' Fee Award, and Service Awards. SA, ¶¶ 8.1-8.3. Doing so will give Settlement Class Members adequate time to evaluate such requests as they consider whether to opt out of or object to the Settlement Rule 23(e)(2)(C)(iii) requires evaluation of the terms of any proposed attorneys' fees including the timing of any payment. The Settlement provides that attorneys' fees will be paid from the Net Settlement Fund only after a separate application is made, Settlement Class Members have an opportunity to object, and the Court determines the appropriate amount. *Id.* ¶¶ 8.1-8.3. Under the Settlement, proposed Class Counsel may request up to thirty-five percent of the Net Settlement Fund. *Id.* ¶ 8.1. Both the Short-Form and Long-Form Notice will also clearly explain that proposed Class Counsel may seek up to this amount in attorneys' fees.

The proposed Service Award to the Class Representative of $2,500.00 is also well within the range of awards granted to a named plaintiff in class proceedings. *See, e.g.*, *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting in class actions that representative plaintiff awards from $2,500 and greater are commonly accepted); *Torretto v. Donnelley Fin. Sols., Inc.*, 2023 WL 123201, at *5 (S.D.N.Y. Jan. 5, 2023) (approving $2,500 service award). Simply put, proposed Class Counsel's request for fees and expenses as well as Service Awards will be supported by law and evidence and are additional bases for preliminary approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

4. Disclosure of side agreements.

There are no additional agreements that require identification or examination under Rule 23(e)(3). *See* Langley Decl. ¶ 40.

**D. The Settlement treats Class Members equitably relative to each other.**

The Court must also consider whether the Settlement treats Settlement Class Members equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats all Settlement Class Members fairly and equally, as all Class Members may obtain equal cash distributions from the Net Settlement Fund after the payment of any Attorneys' Fee Award and Service Award. SA, ¶ 3.5. This Rule 23(e) factor is thus satisfied, and because the Settlement satisfies all of Rule 23(e) requirements, preliminary approval should be granted.

## III. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed settlement. For classes, like this one, certified under Rule 23(b)(3), the Parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) specifically permits notice to be sent by "U.S. Mail, electronic mail, or other appropriate means." The Notice Program—which provides for individual notice to the putative class—negotiated here is the best practicable, calling for Notice to be distributed by email to Class Members for whom Defendant has an email address and by US mail for everyone else. SA, ¶ 4.4.

In this Circuit, courts have explained that a Rule 23 Notice will satisfy due process where it describes the terms of the settlement generally, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final

approval hearing. *See Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012) (internal citations omitted). Here, the proposed Short Form Notice is clear, concise, and informs Settlement Class Members of the general terms of the Settlement, the proposed allocation of attorneys' fees, and provides information regarding the date, time and place of final approval. *See* SA, Ex. A. Further, the Short Form Notice directs Settlement Class Members to the Settlement Website, where they can view additional information about the Settlement and its terms, and view the Long Form Notice. *Id.*; Ex. B. As such, the Notice Program should be approved.

## IV. THE COURT SHOULD APPOINT THE SETTLEMENT ADMINISTRATOR.

In connection with the Notice Program and Settlement Administration, Plaintiff requests that the Court appoint RG/2 Claims Administration LLC to serve as the Settlement Administrator. RG/2 Claims Administration LLC has a trusted and proven track record of supporting class action administration and extensive legal administration experience. *See* RG/2 Decl. ¶ 2.

## V. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.

The last step in the Settlement approval process is a final approval hearing at which the Court will make its final evaluation of the Settlement. Plaintiff and proposed Class Counsel request that the Court schedule the Final Approval Hearing no earlier than one hundred and twenty (120) days after entry of the Preliminary Approval Order. SA, ¶ 10.1.[2]

## CONCLUSION

The Settlement readily meets the standard for preliminary approval. Accordingly, Plaintiff respectfully requests that this Honorable Court enter an order:

[2] The Proposed Preliminary Approval Order, attached as **Exhibit D** to the Settlement Agreement, will also be provided to the Court as an editable Word document.

(i) Preliminarily approving the Settlement and provisionally certifying the Settlement Class in accordance with the proposed Preliminary Approval Order (SA, Ex. D);

(ii) Approving the Notice Program and directing that Notice be distributed to the Settlement Class Members in accordance with the Notice Program;

(iii) Appointing RG/2 Claims Administration LLC as Settlement Administrator;

(iv) Approving the Claim Form and directing the Settlement Administrator to administer the Settlement in accordance with the provisions of the Settlement Agreement;

(v) Appointing Plaintiff Victoria Andretta as Class Representative of the Settlement Class;

(vi) Appointing Matthew J. Langley as Class Counsel;

(vii) Scheduling a Final Approval Hearing to consider the entry of the Final Approval Order and Judgment, and request for Attorneys' Fees, Expenses, and Service Awards, to be held approximately 120 days after entry of the Preliminary Approval Order and

(viii) such other relief as the Court deems just and proper.

Dated: August 22, 2025

Respectfully submitted,

*_/s/ Matthew J. Langley_*
Matthew J. Langley
New York Bar No. 4831749
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
T: (773) 554-9354
matt@almeidalawgroup.com

*Attorney for Plaintiff & Putative Classes*

**CERTIFICATE OF SERVICE**

I certify that on August 22, 2025 the foregoing has been electronically filed with the Court today, causing notice of the same to be served on counsel of record by operation of the ECF system.

*/s/ Matthew J. Langley*
Matthew J. Langley